IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EDWIN PILCHER,

       Plaintiff,

vs.              Case No. 09-2083-SAC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

MEMORANDUM AND ORDER

  Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq. (hereinafter the Act). Finding no error, the court affirms the decision.

**I. Background**

  Plaintiff filed an application for disability benefits in August of 2005. After his claims were denied initially and upon reconsideration, plaintiff requested a hearing before an administrative law judge (ALJ). On May 13, 2008, following a hearing, the ALJ issued a decision finding that plaintiff is able to perform work existing in significant numbers in the economy and is, therefore, not disabled within the meaning of the Act. (Tr. 18-26). Plaintiff disagreed, and sought but was denied Appeals Council review of the ALJ's decision. (Tr. 5-7). Therefore, the ALJ's decision is the Commissioner's final decision which this Court reviews. *Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006).

  Plaintiff claims error only in the ALJ's findings relating to plaintiff's field of vision in

his left eye. Plaintiff does not challenge the accuracy of the following opthalmalogical findings made by the ALJ:

> Records from the Department of Opthalmalogy at the University of Kansas Medical Center show that the claimant missed appointments in June and October 2005 (Exhibit 3F/23-25). The claimant was seen on October 24, 2005 with complaint of worsening visual acuity. His visual acuity was without correction was 20/80 in the right and 20/30 in the left, with pinhole it was 20/60 in the right and 20/20 in the left. The doctor noted that his condition is stable and he has poor compliance with follow up (Exhibit 3F/22). He missed appointments in January 2006, February 2006, March 2006, and April 2006 (Exhibit 3F/16-21). His next visit was on May 15, 2006. The claimant indicated that his visual acuity is getting worse since the last visit. However, his visual acuity without correction was 20/80 in the right and 20/25 in the left, with pinhole it was 20/60 in the right and 20/20 in the left. The doctor noted that the claimant has poor compliance with follow up and medications (Exhibit 3F/16). There was no change in his visual acuity at the next visit on August 7, 2006 (Exhibit 3FIl 5). The claimant missed appointments in October 2006 and was not seen until October 30, 2006. There was no significant change in his visual acuity. He reported not using medication since August. The doctor noted poor compliance and re-discussed the consequence of poor compliance (Exhibit 3F/12). However, the claimant missed his next appointment on December 4, 2006 (Exhibit 3F/II). His next visit was on March 27, 2007. His visual acuity without correction was 20/200 in the right and 20/30 in the left. The doctor noted that his condition is stable and reminded the claimant to be compliant with visits (Exhibit 3F/IO). The claimant missed his next appointment on May 22, 2007 (Exhibit 3F/9). The claimant complained of blurred vision in both eyes at night on July 5, 2007. His visual acuity without correction was 20/150 in the right and 20/25 in the left. The claimant admitted to running of out medication (Exhibit 3F/8). The claimant complained of left eye pain on August 16,2007. His visual acuity without correction was 20/150 in the right and 20/40 in the left. The doctor noted that the claimant is not compliant with medication (Exhibit 3F/7). The claimant missed his next four appointments from November to December 2007 (Exhibit 3F/2-6).
> A physical examination on June 24, 2005 in the Kansas Department of Corrections showed uncorrected visual acuity of 20/20 in the left eye and 20/30 in both eyes. There were no musculoskeletal or neurological abnormalities (Exhibit IF/19-20).

T. 21-22.
> ...
> The claimant attended an opthalmalogical consultative examination on November II, 2005 at the request of the Disability Determination Services. The claimant reported a history of glaucoma status post surgery in the right eye, with total blindness in the right eye. He said that he was told that the glaucoma in his

2

> left eye is under good control. The claimant did not wear glasses. His visual acuity without correction was no light perception in the right eye and 20/25 in the left eye. No visual field was detectable in the right eye. The left eye had a superior altitudinal glaucomatous visual field defect, which ranged from 10 to 90; whoever (sic), the claimant still had more than 40% of his fields remaining. The doctor stated that the claimant has end-stage glaucoma in the right eye with advanced glaucomatous optic atrophy in the left eye, but his intraocular pressures are under very good control currently (Exhibit IF/35-38). *[See* T. 199-201].
>
> The Disability Determination Services medical consultant on December 14, 2005 assessed the claimant with the residual functional capacity for work at all exertional levels with limited near acuity, far acuity, depth perception, and field of vision (Exhibit IF/39-45).

T. 22.

> Thus, the record shows that the claimant has near blindness in the right eye, but retains good visual acuity in the left eye even without correction and with limited visual fields (although retaining over 40% of his visual fields at the opthalmalogical consultative examination). The claimant's visual acuity in the left eye has generally been in the 20/20 to 20/40 range. The records indicate that with compliance with medication and follow up appointments his visual acuity could be improved even further.

T. 23.

Plaintiff contests the accuracy of the ALJ's finding that the plaintiff has the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, stand/walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, no job requiring fine vision or binocular vision, and occasional climbing, balancing, stooping, kneeling, crouching and crawling.

Tr. 21.

**II. Legal Standard**

The court's review is guided by the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual

findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Substantial evidence is more than a scintilla, but less than a preponderance, and is such evidence as a reasonable mind might accept to support a conclusion. *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004); *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir.1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir.1991)); *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. *Gossett*, 862 F.2d at 804-05; *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir.1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d). The claimant's impairments must be of such severity that he is not only unable to perform her past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Wilson*, 602 F.3d at 1140.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. § 416.920 (2008); *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). "If a determination can be made at any of the steps that a claimant is or

4

is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). *Id.* Where, as here, plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 416.920. This assessment is used at steps four and step five of the sequential evaluation process, which ask whether the claimant can perform his past relevant work, and whether he is able to perform other work in the economy. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001); *Williams*, 844 F.2d at 751 n. 2. At step five, the burden of production shifts to the Commissioner to show jobs in the national economy within plaintiff's capacity. *Id.*; *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir.1999).

**III. Claims of error**

**A. Failure to consider functional restriction of loss of visual field**

Plaintiff alleges that the ALJ erred by not considering the functional restrictions imposed by plaintiff's visual field restrictions. Plaintiff relies upon Social Security Ruling (SSR) 07-01p, which mandates that even if the individual's loss of visual field in the better eye does not result in a finding of statutory blindness, the ALJ must consider the functional restrictions imposed by the claimant's Visual Field Loss. Dk. 14, p. 15.

5

The government contends that SSR 07-01p is inapplicable because it pertains only to visual fields measured with automated perimetry and not with kinetic perimetry, as was used on plaintiff. The record supports the government's contention that plaintiff's visual fields were measured on a Goldmann device, Tr. 199, which is not automated. *See* 20 CFR. Pt. 404, subpt. P, app. 1. Nonetheless, based upon the following note in SSR 07-01p, the court finds that ruling to be applicable:

> Our rules provide that in addition to automated static threshold perimetry we can use comparable visual field measurements obtained with kinetic perimetry, such as Goldmann perimetry. Because we allow for different types of testing, our listings provide comparable criteria that can be used with the different types of test results. Accordingly, only one type of testing is needed to evaluate visual field loss under our listings.

SSR 07-01p n. 1, http://www.ssa.gov/OP_Home/rulings /di/01/ SSR2007-01-di-01.html, accessed July 13, 2010. Further, nothing in the nature of the tests compels use of different criteria. In a Goldmann field exam, the client sits about three feet from a screen with a target in the center, stares at the center object and tells the examiner when he can see an object that moves into his side vision. With automated perimetry, the client sits in front of a concave dome and stares at an object in the middle, then presses a button when he sees small flashes of light in his peripheral vision. Both exams create a map of one's peripheral vision. Lastly, the government has failed to show the court that any other SSR addresses visual field measurements obtained with kinetic perimetry. Accordingly, the court finds the cited SSR to be applicable.

Social Security Ruling 07-01p was passed in 2007 for use in evaluating statutory blindness based on visual field loss, and is binding on the ALJ. *See Blea v. Barnhart*, 466 F.3d 903, 909 (10th Cir. 2006); 20 CFR § 422.408 (1989); Fed. Reg. Vol. 72, No.

146, July 31, 2007, p. 41796 (re: SSR 07-01p). It advises the ALJ how to evaluate severe visual field loss that has not resulted in statutory blindness, stating:

> If the individual's visual disorder has resulted in severe visual field loss but has not resulted in statutory blindness, we will consider whether the visual disorder meets listing 2.03B or 102.03B. A visual disorder meets listing 2.03B or 102.03B when the MD for the better eye, measured with an HFA 30-2, is -22 dB or worse. If the visual disorder does not meet a listing, we will determine whether the visual disorder medically equals a listing or, if not, assess the limitations imposed by the visual disorder.

*Id*. The record does not show that plaintiff's visual field loss in his left eye was severe, as is necessary to trigger the determinations required under this ruling. Nonetheless, in determining the claimant's RFC, the ALJ is required to consider the effect of all of the claimant's medically determinable impairments, both those deemed "severe" and those "not severe." *See* SSR 96-8P, 1996 WL 374184, at *5.

Plaintiff does not challenge the ALJ"s finding that his left eye still had more than 40% of his fields remaining, but contends that the ALJ failed to determine the functional restrictions imposed by his 60% loss of visual field. By this, plaintiff appears to allege that the ALJ failed to credit all of his testimony about his loss of vision. Plaintiff testified, "I see double and I see things that ain't there. I see it and then I don't. And I trip over the same thing, I runs into tables and other things in the household." (T482). He stated that he has problems with depth of vision and approximately four times a day he loses vision for five minutes in his left eye when going indoors from the bright outside (Tr. 482). He testified that he last drove in 2000 but could not drive now (T482), and that he wears sunglasses because "the sunlight blinds my eyes. It's hard for me to see." (T483). He further testified that his wife helps him with his daily activities, stating: "She helps me get dressed, find clothes, prepare meals and pretty much everything." (T484). He further testified that he

7

had problems distinguishing colors. (T484).

In assessing the limitations imposed by plaintiff's visual disorder, the ALJ found:

> He also has not been compliant with medication and follow ups for his eyes despite being warned repeatedly by his doctor. The claimant does not wear eyeglasses. ... It is reasonable to assume that if the claimant were experiencing the disabling problems alleged, he would have received more aggressive treatment and he would have been fully compliant with treatment.

T. 23. After considering all evidence of record, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms, (Tr. 21, 24), but that his statements regarding intensity, persistence, and limiting effects of the symptoms were not fully credible to the extent they were inconsistent with the RFC finding (Tr. 21, 24). *See Dellinger v. Barnhart*, 298 F. Supp. 2d 1130, 1137-38 (D. Kan. 2003); *Caldwell v. Sullivan*, 736 F. Supp. 1076, 1081 (D. Kan. 1990).

Although plaintiff does not directly challenge the ALJ's credibility determinations, the ALJ's rejection of some of plaintiff's testimony inheres in the RFC. It is well-established that "[c]redibility determinations are peculiarly the province of the finder of fact and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) (quotation omitted). Even so, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (alteration omitted).

The court notes that the medical consultant who assessed the claimant on December 14, 2005 with the RFC for work at all exertional levels with limited near acuity, far acuity, depth perception, and field of vision (Exhibit IF/39-45) found the claimant to be only "partially credible." T. 206. Additionally, all of plaintiff's field of vision tests from

Kansas University for his left eye found "false negative errors," "low test reliability," or "low patient reliability." (Tr. 265, 267, 269). The ALJ was permitted to rely upon this evidence, as well as all other evidence, in making his own determination of the plaintiff's credibility. The court does not find the ALJ's credibility determination to be arbitrary; on the contrary, it is based upon his consideration of appropriate factors, and the court thus accords that determination the deference it is due. No error has been shown in the ALJ's consideration of the functional limitations imposed by plaintiff's visual field loss.

### B. Failure to call medical expert

Plaintiff mentions the ALJ's failure to call a medical expert, but the arguments in his brief on this issue are too cursory and undeveloped for review. *See Am. Airlines v.Christensen*, 967 F.2d 410, 415 n.8 (10th Cir. 1992).

Plaintiff suggests that the ALJ should have called a medical expert to interpret his eye charts from Kansas University Hospital. Those charts, however, show that each eye chart, *i.e.*, vision field analysis, for plaintiff's left eye was unreliable. (Tr. 265-69). Specifically, plaintiff's field analysis dated August 16, 2007 reported false negative errors of 20% and stated, "low test reliability" (Tr. 265); his field analysis dated July 5, 2007 reported false negative errors of 40% (Tr. 267); and his field analysis dated May 15, 2006 stated "low patient reliability." (Tr. 269). Accordingly, the KU charts were not sufficiently reliable to warrant a finding that the ALJ erred in failing to consider them.

Plaintiff may additionally contend that the ALJ erred by not calling a medical expert to interpret a different eye chart relating to plaintiff's visual field, which the court addressed above. The record reflects that the plaintiff was examined at the State Agency's request on November 11, 2005 by Dr. John W. Taylor (199-202), who

9

concluded that plaintiff had "a superior altitudinal glaucomatous visual field defect in the left eye" and "advanced glaucomatous optic atrophy in the left eye." (T 199). Dr. Taylor included the map previously discussed, which charts plaintiff's remaining visual fields. Based upon this chart, plaintiff contends that his field of vision is "very tightly constricted." Dk. 14, p. 16.

In this case, expert medical testimony at the hearing was not necessary. Two consulting physicians (one examining and one non-examining) provided narrative information regarding the chart at issue (Tr.199-201, 220, 221, 225). The ALJ appropriately addressed and utilized this evidence, as well as sufficient additional evidence of record to permit an informed decision as to the plaintiff's visual impairments (Tr. 21-24). *See Robertson v. Chater*, 900 F. Supp. 1520, 1530 (D. Kan. 1995). He then properly considered those impairments in formulating the RFC, which precludes "any job requiring fine vision or binocular vision." (Tr. 21).

**C. Incorrect legal standard - RFC**

Plaintiff additionally contends that the ALJ erred by failing to apply the proper legal framework in formulating his RFC. Plaintiff broadly contends that "[i]n making his RFC finding, the ALJ skipped over all of the considerations mandated by SSR 96-8p..." Dk. 14, p. 17. This broad, conclusory assertion adds little to the specific claims addressed above.

The ALJ's decision reflects that he properly defined RFC as "an individual's ... ability to do physical and mental work activities on a sustained basis despite limitations from his impairments," and in making that finding, he considered "all of the claimant's impairments, including impairments that are not severe." Tr. 19. The ALJ appropriately

considered plaintiff's limitations and restrictions, giving a thorough review of the record, as required by SSR 96-8p. *See Wright v. Barnhart*, 359 F. Supp. 2d 1174, 1180 n.1 (D. Kan. 2005). The ALJ accurately formulated the plaintiff's RFC by analyzing and weighing the evidence of record under the correct legal standard.

### D. Incorrect hypothetical

Lastly, plaintiff asserts that the hypothetical question posed by the ALJ to the vocational expert (VE) was deficient in not including plaintiff's visual field restrictions. The ALJ asked the VE the following hypothetical:

> Q. I don't think he has any substantial gainful activity so for purposes of the claimant's potential entry level work assume the claimant to be 48-years-old with a 12th grade education capable of performing medium work with mild pain, which would include the ability to stand or walk six hours out of eight hours, sit six hours out of eight hours. Occasionally climb, balance, stoop, kneel, crouch and crawl and he should have no job requiring fine vision or binocular vision because he's blind in one eye, the right eye and has some diminished vision in his left eye. Okay, would there be entry level work the claimant could perform, if so, what would the numbers of the jobs be?
>
> A. Yes. ...

Tr. 487. The vocational expert stated his familiarity with loss of field of vision and its impact on an individual's vocational ability (Tr. 489) and opined that the plaintiff could perform medium jobs as a hand packager or night cleaner and that such jobs existed in the regional and national economy (Tr. 487). Additionally, he opined that the plaintiff was able to perform light jobs such as cleaner/housekeeping or sales attendant, which also existed in the regional and national economy (Tr. 487-88).

Plaintiff's counsel then asked the VE a different hypothetical.

> Q. Okay. So if the claimant had a vision field of basically only straight in front of his face, from one eye vision he can see the right hand only when it's up against

11

his nose. So basically can see only straight out to the right and has a limited field of vision to the left to no more than six inches from the side of his head. That's going to be his field of vision. He would also have restrictions in the sense that he could not work in sunlight, would also have loss of vision several times a day, he said up to four times a day for at least five minutes where he would have no vision at all. Could he sustain any of these jobs you stated or any other jobs in the national economy?

A. So you're saying during a workday he could have a complete loss of vision up to a few minutes a day?

Q. Yes. And this would be at unscheduled times, so it wouldn't be necessarily

A. Right. Yeah, I think that would preclude -- that plus the other things in the hypothetical would preclude competitive employment on a sustained basis if that were happening every day.

Tr. 489. In his decision, the ALJ assigned plaintiff the same RFC as was described in his hypothetical question to the VE, tacitly rejecting the factors posed by plaintiff's counsel in this hypothetical.

The hypothetical question "must include all-and-only-those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995). *See Mushero v. Astrue*, 2010 WL 2530728, 2 (10th Cir. June 24, 2010)."Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482,1492 (10th Cir. 1991) (alteration and quotation omitted). The ALJ is not required to include in a hypothetical question limitations "claimed by plaintiff but not accepted by the ALJ as supported by the record," *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir.1995). See *Hunter v. Astrue*, 321 Fed.Appx. 789, 794 (10th Cir. 2009); *Wise v. Barnhart*, 42 Fed.Appx. 331, 333 (10th Cir. 2002). "Without question, the ALJ may restrict the questions to those limitations which he has found to be based upon

credible evidence. *See Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993)." *Francis v. Chater*, 974 F. Supp. 1361, 1367 (D. Kan.1997).

Here, in formulating a hypothetical question, the ALJ relied upon plaintiff's impairments supported by substantial evidence in the record. *See Patterson v. Apfel*, 62 F. Supp. 2d 1212, 1218 (D. Kan. 1999) (citing *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir.1990)). No evidence tends to support the plaintiff's testimony that he would completely lose vision up to four times a day at unscheduled times for at least five minutes. The ALJ included all the limitations ultimately included in plaintiff's RFC assessment, rendering the vocational expert's answer a proper basis for the ALJ's disability decision. *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000).

Even if the ALJ had erred in not including a specific field of vision limitation in the hypothetical, this court will not reverse the ALJ's decision for failure to fully and fairly develop the record unless plaintiff shows that he was prejudiced by such error.

> ... the Administrative Procedures Act directs reviewing courts to take "due account ... of the rule of prejudicial error." 5 U.S.C. § 706. As a result, we may overturn the ALJ's decision only if the error in excluding evidence "prejudicially affect[ed] a substantial right of a party." *See Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1296 (10th Cir.1998) (applying the prejudicial error rule to a judgment on a jury verdict). An error is prejudicial only "if it can be reasonably concluded that with ... such evidence, there would have been a contrary result." *Id.* (internal quotation marks omitted).

*Gunderson v. U.S. Dept. of Labor*, 601 F.3d 1013, 1021 (10th Cir. 2010). Plaintiff has failed to show such prejudice. The vocational expert testified that plaintiff could perform medium work as a hand packer or a night cleaner, and light work as a cleaner/ housekeeping or sales attendant. None of those jobs has been shown to require a field of vision beyond that possessed by plaintiff, *see* DICOT 920.578-018; 381.687-018;

323.687-014, 299.677-010, and there is no evidence in the record that plaintiff's field of vision would affect his ability to perform any of those jobs. Although plaintiff's counsel incorporated plaintiff's field of vision as one of many factors in his hypothetical to the VE, he also included more severe factors such as plaintiff's complete and unpredictable loss of vision for a few minutes each day, which appear to have motivated the VE's changed response. Because the VE's response was not premised solely upon the plaintiff's limited field of vision, that response does not assist the plaintiff in showing prejudice. Plaintiff has not shown that he was prejudiced by the ALJ's failure to specify plaintiff's field of vision limitation in his hypothetical, rather than stating plaintiff had "some diminished vision" in his left eye. The hypothetical to the VE fairly encompassed all of plaintiff's functional limitations found to be reasonably credible. The ALJ's hypothetical was not deficient; therefore, the VE testimony is substantial evidence that supports the ALJ's step five findings. Where, as here, the ALJ's findings are based on a rational interpretation of substantial evidence, the Commissioner's determination will not be disturbed.

IT IS THEREFORE ORDERED that the decision of the Commissioner is affirmed and the court enters judgment in accordance with the fourth sentence of 42 U.S.C. § 405(g).

Dated this 28th day of July, 2010 at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge